IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUIS ARITA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-01173 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| WEXFORD HEALTH SOURCES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Luis Arita has brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights by denying him adequate medical care for an inguinal hernia that he suffered while incarcerated at Sheridan Correctional Center ("Sheridan"). Arita has sued Wexford Health Sources, Inc. ("Wexford"), which is the correctional health care company that provides medical services to inmates in the custody of the Illinois Department of Corrections, certain Wexford employees, and several members of the Sheridan medical staff. Before the Court is Wexford's motion to dismiss Count II of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 36.) For the reasons explained below, the motion is granted.

## BACKGROUND

Arita's two-count amended complaint alleges that the various defendants ignored his complaints of swelling and pain in his groin area for nine months before finally examining him and ultimately discovering that he suffered from an inguinal hernia.[1] Specifically, Arita alleges that shortly after being transferred to Sheridan from another Illinois Department of Corrections

---

[1] For purposes of the present motion, the Court accepts as true all well-pleaded factual allegations set forth in the amended complaint and draws all reasonable inferences in Arita's favor. *See, e.g., Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

facility in or around January 2014, he noticed a painful swelling in his groin area. (Am. Compl. ¶¶ 11-12, Dkt. No. 20.) Approximately one month later, in or around February 2014, Arita notified members of the Sheridan medical staff of his increasing discomfort. (*Id*. ¶ 12.) When he did not receive any treatment, Arita continued to complain about his condition to the Sheridan medical staff over a period of many months, including through written complaints and grievances directed to Defendants Nicolette Duffield (an administrator of Sheridan's medical department), Marshall James (a Wexford physician), and Chantel Sielman, Krista Torez, and Debbie McCullum (all Wexford nurses). (*Id.* ¶¶ 5-9, 13.)

After nine months of repeated treatment demands, Arita finally received a medical examination in late November 2014. (*Id.* ¶ 14.) When the examination found extreme swelling in his groin area, further tests were ordered. (*Id.* ¶¶ 14-15.) The tests revealed that Arita suffered from an inguinal hernia. (*Id.* ¶ 15.) In late January 2015, it was determined that the hernia required an operation. (*Id.* ¶ 16.) Arita underwent surgery to have the hernia repaired approximately one month later in February 2015. (*Id.*) Arita alleges that over the 12 months he waited to receive a medical examination and the necessary treatment, his hernia grew in size and caused him increasing pain. (*Id.* ¶ 17.)

In Count I of his amended complaint, Arita claims that the individual defendants were deliberately indifferent to his serious medical needs by failing to provide adequate treatment despite his complaints of swelling and pain, and that as a result he suffered extreme pain and mental anguish. Count II asserts essentially the same claim against Wexford—Arita alleges that Wexford, through its employees, systematically ignored his complaints of pain and requests for treatment. Arita further alleges that Wexford has a policy of ignoring inmates' medical needs. In its motion to dismiss, Wexford contends that Arita has failed to state a claim against it under

2

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) and therefore Count II must be dismissed.

**DISCUSSION**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Id.* at 570. This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In *Monell*, the Supreme Court established that a municipality may be liable for money damages under § 1983 only if the unconstitutional act about which the plaintiff complains was caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). Private contractors that provide medical services to prisoners are treated like municipalities for purposes of § 1983 claims. *See, e.g., Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (citing *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 n.1 (7th Cir. 2004)). *Monell* liability "is not founded on a theory of vicarious liability or

*respondeat superior* that holds a municipality responsible for the misdeeds of its employees. Rather, a municipal policy or practice must be the direct cause or moving force behind the constitutional violation." *Woodward*, 368 F.3d at 927 (quoting *Estate of Novack ex rel. v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)).[2] Thus, to prevail on his *Monell* claim against Wexford, Arita must show that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014).

"Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing." *Taylor v. Wexford Health Sources, Inc.*, No. 15-cv-05190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016). In addition, a plaintiff asserting a policy or practice claim ultimately "must demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. The Seventh Circuit has declined to adopt a bright-line rule defining what constitutes a widespread custom or practice, and there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability. *See id.* It is clear, however, that the conduct complained of must have occurred more than once, or even three times. *See id.* Moreover, while "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience[,]" it is difficult because "what is needed is evidence that there is a true municipal [or

---

[2] The parties disagree regarding whether Arita seeks to assert a claim against Wexford under § 1983 based on *respondeat superior* liability. But it is clear that under the current law of this Circuit, Wexford is immunized from such liability. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789-96 (7th Cir. 2014) (questioning the wisdom of the extension of *Monell* to private entities and the foreclosure of *respondeat superior* liability against private entities under § 1983, but reaffirming that those rules continue to be the law of this Circuit). For the same reason—that is, because an entity can be held liable under § 1983 only through a *Monell* policy or practice claim—the Court need not address the parties' arguments with respect to whether Wexford can be held "individually" liable for its alleged exercise of deliberate indifference to Arita's medical needs.

4

corporate] policy at issue not a random event." *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008).

Here, Arita's only *Monell*-related allegation is that "Wexford, upon information and belief, has a policy of ignoring not only [his] requests/complaints, but other inmates' medical needs as well." (Am. Comp. ¶ 27, Dkt. No. 20.) The remainder of the complaint is focused on Arita's own experience. Arita's single conclusory allegation that Wexford has policy of treating other inmates in the same fashion as he has been treated is insufficient to survive a motion to dismiss. *See, e.g., Taylor*, 2016 WL 3227310, at *4 ("[Plaintiff's] allegations of Wexford's policies and practices are vague and broad, lacking in sufficient detail to put Wexford on notice of the claim against it."); *Velazquez v. Williams*, No. 14-cv-9121, 2015 WL 4036157, at *4 (N.D. Ill. June 30, 2015) (the allegation that Wexford had a policy and practice of denying psychotropic medicines to mentally disabled inmates was insufficient to state a *Monell* claim); *Johansen v. Curran*, No. 15-cv-2376, 2016 WL 2644863, at *8 (N.D. Ill. May 10, 2016) (noting that the court was bound by "the Seventh Circuit's decision in [*McCauley v. City of Chi.*, 671 F.3d 611 (7th Cir. 2011)] holding that conclusory allegations of a policy or practice in support of a *Monell* claim are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*.") (internal quotation marks omitted).

Arita's allegation of a Wexford policy—made "upon information and belief"—is unsupported by any facts regarding the experiences of other inmates. *See Taylor*, 2016 WL 3227310, at *4 ("Taylor does not allege that any other detainee suffered from similar issues, only including a conclusory reference to other prisoners' experiences at Stateville."); *Winchester v. Marketti*, No. 11-cv-9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar

constitutional violations with any degree of factual specificity."). In other words, there are no facts—outside of those related to Arita's own experience—that plausibly suggest Wexford has maintained a widespread custom or practice of ignoring Sheridan inmates' medical needs. *Cf. Ford v. Wexford Health Sources, Inc.*, No. 12-cv-4558, 2013 WL 474494, at *9 (N.D. Ill. Feb. 7, 2013) (plaintiff sufficiently alleged a widespread practice by alleging facts showing a custom or practice of delayed delivery of medical permits, failure to administer medication or administration of ineffective medication, and delayed scheduling of medical appointments). Arita does not provide any facts, general or specific, regarding the experiences of other Sheridan inmates with respect to Wexford's provision of medical care. This case thus stands apart from those involving allegations of a series of bad acts giving rise to an inference of a policy, practice, or custom of deliberate indifference.

Nor does Arita's complaint shed any light on what Wexford's alleged policy might be—that is, what specific policy might lead to the systematic disregard of inmates' medical needs. *Cf. Harper v. Wexford Health Sources, Inc.*, No. 14-cv-04879, 2016 WL 1056661, at *3 (N.D. Ill. Mar. 17, 2016) (plaintiff's allegation of the existence of a specific policy—namely, cost-cutting measures—that resulted in his receiving inadequate medical care was sufficient to survive a motion to dismiss). *But see Echezarreta v. Kemmeren*, No. 10-cv-50092, 2013 WL 4080293, at *3 (N.D. Ill. Aug. 13, 2013) (plaintiff's allegation that on information and belief it was defendant's custom and practice to remain deliberately indifferent to the serious medical conditions and needs of the inmate population in order to avoid spending the money necessary to diagnose and treat such conditions was nothing more than a recitation of the elements of a *Monell* claim and, without any additional facts to elucidate any customs or practices, was unsupported and speculative in nature).

While courts in this District have found conclusory allegations of a general policy of ignoring inmates' requests for medical attention sufficient to withstand a motion to dismiss, *see, e.g., Quinn v. Hardy*, No. 11-cv-1173, 2013 WL 4836262, at *4 (N.D. Ill. Sept. 10, 2013), Arita's factually unsupported, boilerplate allegation does not allow for such a finding here. This is especially true in light of Arita's allegations regarding his own experience—essentially, one instance of delayed medical treatment. Whether the delay in treatment amounts to deliberate indifference and whether the care Arita ultimately received was adequate are questions for a later day. But the complaint fails to suggest that Arita's experience was something other than a random event. In other words, Arita has failed to allege any facts from which the Court may reasonably infer that there is an actual policy or practice at issue here as opposed to a single incident of delayed medical treatment. Accordingly, the *Monell* claim against Wexford must be dismissed.

## CONCLUSION

For the reasons stated above, Wexford's motion to dismiss (Dkt. No. 36) is granted. Count II of Arita's amended complaint is dismissed without prejudice.

ENTERED:

Dated: October 31, 2016

_____
Andrea R. Wood
United States District Judge